IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CHRISTINE CUNNINGHAM HIGGINS                                    PLAINTIFF

vs.                                             CIVIL ACTION NO. 1:10-cv-00103-SAA

MICHAEL J. ASTRUE,
COMMISSIONER OF SSA                                             DEFENDANT

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Christine Cunningham Higgins for period of disability (POD), disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively filed applications for POD, DIB and SSI on May 15, 2006, alleging disability beginning on March 20, 2005. Docket 6, Exhibit 5, p. 2 -11, 13.[1] Plaintiff later amended her disability onset date to September 4, 2006.[2] Ex. 2, p. 24-25. Her claim was denied initially (Ex. 3, p. 2-3) and on reconsideration. Ex. 3, p. 4-5. She filed a request for hearing (Ex. 4, p. 15) and was represented by an attorney at the administrative hearing on September 9, 2008. Ex. 2, p. 21-47. The Administrative Law Judge (ALJ) issued an unfavorable decision on October 8, 2008 (Ex. 2, p. 11-19), and the Appeals Council denied her request for a review. Ex. 2, p. 2- 4. Plaintiff filed the instant appeal from the

---

[1]The Administrative Record in this case is attached to the defendant's Answer at Docket Entry 6. All citations to the Administrative Record are to the Exhibit and Page Number at Docket Entry 6 and not to the bates number at the bottom of the page.

[2]On the amended alleged disability onset date, the plaintiff qualified as an individual "closely approaching advanced age."

ALJ's most recent decision, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on September 4, 1956 and was 50 years old at the alleged onset of her disability. Ex. 2, p. 26. She completed the eleventh grade and obtained a GED. Ex. 2, p. 27. Previously employed as a certified nursing assistant and an inspector in the garment manufacturing industry (Ex. 2, p. 43), the plaintiff initially claimed disability due to a work-related lower back injury and high blood pressure. Ex. 6, p. 18. During the pendency of her disability application, she was diagnosed with diabetes. Ex. 7, p. 115-118.

The ALJ determined that plaintiff suffered from "severe" impairments, including hypertension, obesity, lumbar disc disease and diabetes melitus (Ex. 2, p. 13014), but that plaintiff's impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

In evaluating the plaintiff's obesity, the ALJ noted her weight – between 295 and 316 pounds[3] – and considered obesity in combination with her other severe impairments. Ex. 2, p. 13, 15. He concluded that the plaintiff's hypertension and obesity did not meet Listing 4.02 and that her lumbar disc disease and obesity did not meet Listings 1.02 or 1.04 because the record evidence did not demonstrate root involvement, arachnoiditis or pseudoclaudication as required.

---

[3]The plaintiff is 5'8" tall. Ex. 2, p. 26.

Ex. 2, p. 13. Although the plaintiff claims to require a cane for walking,[4] the ALJ found that the plaintiff "is able to ambulate effectively" and noted that "examinations show she was ambulatory with a steady gait without an assistive device." Ex. 2, p. 13. Finding no evidence of diabetic retinitis proliferans, diabetic ketoacidosis, or peripheral neuropathy, the ALJ held that the criteria of Listing 9.08 were not satisfied for plaintiff's diabetes and obesity. *Id.*

Considering plaintiff's "severe" impairments, the ALJ concluded that the plaintiff retains the Residual Functional Capacity (RFC) to "lift/ carry 20 pounds occasionally and 10 pounds frequently; stand/ walk 6 hours out of an 8-hour workday; and sit 6 hours out of an 8-hour workday. She can occasionally climb stairs, but never climb ropes, scaffolds or ladders. She can occasionally balance, stoop, crouch, kneel and crawl. She is limited to jobs that allow her to alternate between sitting and standing as needed." The ALJ found that "[t]he level of pain and functional impairment the claimant alleged is disproportionate to the medical evidence and her activities of daily living" (Ex. 2, p. 14); he afforded little weight to treating physician Dr. Buckley's medical source statement limiting the plaintiff to sedentary work "because it was not well supported by objective medical evidence from his treatment notes or the other evidence of record." Ex. 2, p. 17. The ALJ adopted the RFC of consultative physician, Dr. Saddler,[5] but noted that "it fails to adequately address the claimant's combined impairments and her subjective complaints of pain." Ex. 2, p. 16. Consequently, the ALJ "reduced the residual functional capacity to include a sit/stand option." *Id.*

---

[4]The plaintiff testified that she uses a cane because her "legs give out" and that Dr. Buckley recommended use of a cane. Ex. 2, p. 33-34.

[5]Dr. Saddler's primary diagnosis was morbid obesity with a BMI of 47. He also considered her back pain with "good" range of motion Ex. 2, p. 24-31.

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff's "severe" impairments prevent her from performing her past relevant work. Ex. 2, p. 17. The VE testified that with the limitations set out by the ALJ in his hypothetical, the plaintiff would be able to perform light exertional work such as a personnel attendant using transferable skills – compiling data, dealing with people, manipulating associated instruments and devices – or other light unskilled jobs such as an assembler. Ex. 2, p. 43-45.

The plaintiff claims that the ALJ erred in discounting Dr. Buckley's opinion (Docket 12, p. 10), in adopting the "light" duty rating of two doctors who treated the plaintiff in violation of SSR 96-5 and in not providing "the frequency of [the] need" for an option to sit/stand at will in his "formulation of the RFC." Docket 12, p. 14-16. Additionally, the plaintiff contends that the evidence supports a finding that the plaintiff can perform, at most, sedentary work with the consequence that the grid under Medical Vocational Guideline 201.14 directs a finding of disability.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[6] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[7] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[8] Second,

---

[6] *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[7] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[8] 20 C.F.R.§§ 404.1520(b), 416.920(b) (2003).

4

plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[9] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[10] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[11] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[12] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[13]

This court is limited on appeal to determining whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Qualls v. Astrue*, 339 Fed. Appx. 461 (5th Cir. 2009), citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989,

---

[9] 20 C.F.R. §§ 404.1520, 416.920 (2003).

[10] 20 C.F.R. §§ 404.1520(d), 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525, 416.925 (2003).

[11] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2003).

[12] 20 C.F.R §§ 404.1520(f)(1) (1996) & 416.920(f)(1) (1996).

[13] *Muse*, 925 F.2d at 789.

992 (5th Cir. 1983). The court has limited powers of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[14] even if it finds that the evidence leans against the Commissioner's decision.[15] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since 2005 – before her alleged onset date of September 4, 2006 – satisfying step one. Ex. 2, p.29. The ALJ found at step two that plaintiff's hypertension, obesity, lumbar disc disease and diabetes melitus were severe impairments. Ex. 2, p. 13-14. He found at step three that plaintiff's impairment did not

---

[14] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[15] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

meet the stringent requirements set out in the listings,[16] and at step four that plaintiff could not return to her past work. Ex. 2, p. 17. The ALJ's step five determination that plaintiff retained the functional capacity for performing other light work resulted in a finding of "not disabled" under the Act. Ex. 2, p. 14-19.

Plaintiff claims that the ALJ improperly discounted her treating physician Dr. Buckley's opinion "because there was no reliable medical evidence from a treating or examining physician controverting Dr. Buckley's opinion." Docket 12, p. 13. The Commissioner responds that the ALJ had good cause to do so because Dr. Buckley's opinions were inconsistent both with his own prior findings[17] and with the reports of other medical sources. Docket 13, p. 6-8.

Good cause may exist to allow an ALJ to give lesser weight to evidence from a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000). Dr. Buckley's medical opinion report, which was dated July 10, 2008 and submitted at the hearing, placed limitations on the plaintiff's ability to occasionally and frequently lift and carry less than 10 pounds, stand/ walk less than 2 hours out of an 8-hour workday, sit less than 2 hours out of an 8-hour workday and shift from sitting or standing/walking at will. Ex. 8, p. 2-5. The ALJ, on the other hand, found that plaintiff could lift/carry 20 pounds occasionally and 10 pounds

---

[16] *See Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that he meets each element of the listing).

[17] Dr. Buckley reported that the plaintiff was ambulatory with a steady gait on November 14, 2006 and February 12, 2008. Ex. 8, p. 7, 22.

frequently; stand/walk 6 hours out of an 8-hour workday; and sit 6 hours out of an 8-hour workday. The ALJ did, however, adopt Dr. Buckley's assessment that plaintiff should be limited to jobs that allow her to alternate between sitting and standing as needed.

In the Fifth Circuit "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995); 20 C.F.R. § 404.1527(d)(2). Here, because Dr. Buckley's opinion was significantly more restrictive of the plaintiff's impairments than the remaining record opinion evidence, the ALJ dedicated a significant portion of his decision to explaining why he discounted the remaining aspects of Dr. Buckley's opinions.[18] Furthermore, even though the ALJ did not accept Dr. Buckley's restrictions, which would have limited plaintiff to sedentary work, he did incorporate Dr. Buckley's opinion of the plaintiff's need to alternate sitting and standing.

The ALJ credited opinions of consultative examining physician, Dr. Fleetwood, and consultative non-examining physician, Dr. Saddler.[19] Although he afforded significant weight to Dr. Saddler's opinion that the plaintiff is limited to "light exertion" work, he found that Saddler did not "adequately address the claimant's combined impairments and her subjective complaints of pain." Ex. 2, p. 16. He compensated for the deficiencies in Dr. Saddler's report by including a sit/stand option in his RFC determination.

---

[18] Page 16 of the ALJ's decision is dedicated almost entirely to explaining his reasons for doing so. Ex. 2, p. 17.

[19] Dr. Fleetwood examined the plaintiff and reported impressions of hypertension, back pain and obesity but did not provide a medical source statement (MSS). Ex.7, p. 22-23.

The ALJ further relied upon another treating physician, Dr. Stokes, in limiting the plaintiff to light work. Dr. Stokes provided a work status report that listed permanent restrictions on pushing and pulling to less than 50 pounds, limited lifting to 30 pounds and limited bending or twisting and squatting or kneeling.[20] Ex. 7, p. 35. He did, however, give "little weight" to Dr. Stokes's limitations on bending, twisting, squatting and kneeling "because she did not quantify the limitations" and because there was "no objective evidence of lower extremity impairment to justify greater than occasionally postural limitations," but he did fid that the remaining postural limitations were consistent with the medical consultant's assessment and the objective medical evidence. Ex. 2, p. 17.

The plaintiff challenges the adoption of Dr. Stokes's use of the term "light" because the ALJ did not demonstrate that Dr. Stokes understood the definition as defined by the social security regulations. Docket 12, p. 14. However, the ALJ's decision demonstrates that he evaluated the medical and testimonial evidence and did not summarily accept the term "light" as used by any treating or consulting physician. Dr. Stokes provided specific weight restrictions in assessing the plaintiff's abilities,[21] and Dr. Saddler used the Commissioner's Physical Residual Functional Capacity Assessment form. Docket 13, p. 12-13.

Although a treating physician's opinion and diagnosis should be given considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's

---

[20]Dr. Stokes also provided an additional statement that the plaintiff was unable to perform the essential functions of "lifting, bending and twisting" required by her job. Ex. 7, p. 40.

[21]The plaintiff additionally challenges Dr. Jones's understanding of the term "light"(Docket 12, p. 14); the Commissioner notes that Dr. Jones found that the plaintiff had full range of motion and self-reported that she had no problems walking. Docket 13, p. 12.

9

disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted).

The Commissioner contends, and the court agrees, that the evidence supports a contrary conclusion, and the ALJ "provided valid reasons for giving Dr. Buckley's opinion little weight." Docket 13, p. 6-8. In *Newton*, the Fifth Circuit enumerated several factors that the ALJ must consider before declining to give evidence of a treating physician controlling weight:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d)(2). Social Security Administration Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it] gives the claimant's] treating source's opinion," and the regulations list factors an ALJ must consider in assessing weight given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *See Id.* The regulation is construed in Social Security Ruling ("SSR") 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

*Newton* at 456.

Under SSR 96-5p, an ALJ must provide appropriate explanations when he does not grant

disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted).

The Commissioner contends, and the court agrees, that the evidence supports a contrary conclusion, and the ALJ "provided valid reasons for giving Dr. Buckley's opinion little weight." Docket 13, p. 6-8. In *Newton*, the Fifth Circuit enumerated several factors that the ALJ must consider before declining to give evidence of a treating physician controlling weight:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d)(2). Social Security Administration Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it] gives the claimant's] treating source's opinion," and the regulations list factors an ALJ must consider in assessing weight given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *See Id.* The regulation is construed in Social Security Ruling ("SSR") 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

*Newton* at 456.

Under SSR 96- 5p, an ALJ must provide appropriate explanations when he does not grant

the treating physician's opinions controlling weight. *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000). Although the ALJ in this case did not address the *Newton* factors in rote form, he nevertheless fully addressed the proper factors in his analysis before deciding that Dr. Buckley's opinion should not be given credence. In formulating the RFC, the ALJ explained at length his decision to discount Dr. Buckley's opinion, including noting the gaps in treatment of the plaintiff – December 2004 trough November 2006 and from November 2006 through January 2008. According to the ALJ, the significant treatment gaps illustrated a poor treating relationship and that her symptoms were not as severe as she alleged.

Generally, a treating physician has a unique perspective regarding the plaintiff's abilities, limitations, medical history and diagnosis. However, the significant gaps in treatment history in combination with record evidence contradicting Dr. Buckley's restrictive assessment[22] support the ALJ's decision to discount his opinion.

The plaintiff further claims that the ALJ erred in assessing the RFC, specifically in failing to detail his finding that the plaintiff required a job where she could alternate sitting and standing. Docket 12, p. 14-16. This argument lacks merit because the ALJ adopted the most restrictive limitation for this aspect of the RFC in finding that she required a job that allowed alternate sitting and standing as needed. In adopting this limitation, he accounted for the plaintiff's subjective complaints of pain, despite having found the plaintiff to be less than credible in her descriptions of the intensity, persistence and limiting effects of her symptoms (Ex. 2, p. 15), and he did account for Dr. Buckley's opinion, despite discounting the remaining

---

[22]For example, medical records indicating that the plaintiff was injured while playing volleyball on July 18, 2007 (Ex. 7, p. 108), after the alleged disability onset.

aspects of his assessment.  Furthermore, the ALJ incorporated the limitation in the hypothetical question presented to the VE, and the plaintiff did not challenge the VE's testimony or ask any additional questions of the VE.

The responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ,  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), and in making his determination he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite his physical and mental limitations.  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).  However, the ALJ may not establish physical limitations or the lack thereof without medical proof to support such a conclusion.  *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).   "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C 405(g), unless they are reached by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d at 35.

The ALJ properly considered all of plaintiff's alleged impairments to the extent that they were credible in light of the entire record, including the effects of obesity in combination with the plaintiff's other impairments;[23] he formulated an RFC that incorporated the plaintiff's subjective complaints of pain; he considered all the opinion evidence and detailed his findings

---

[23]"In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the [ALJ] is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  He is required to "analyze both the disabling effect of each of the claimant's ailments and the combined effect of all of these impairments." *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000).

specifically when he discounted aspects of those opinions; he requested medical records and consultive opinions and satisfied his affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). At step five of the sequential process, the ALJ relied on the testimony of the VE and applied Rule 202.15 of the Medical Vocational Guidelines for light work. Plaintiff's contention that the ALJ erred in not applying Rule 201.14 for sedentary work, which would direct a finding of disability, is without merit.

The plaintiff further claims that the ALJ erred in not re-contacting Dr. Buckley for further information. Docket 12, p. 13. However, she does not specify what additional information should have been requested by the ALJ and the record does not reflect any issue that required clarification. Although an ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled" 20 C.F.R. §§ 404.1512(e), 416.912(e), the ultimate burden of establishing disability remains with plaintiff, *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995), and the plaintiff bears the burden of supplying records of medical examination and treatment during the relevant period. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); 20 C.F.R. 404.1512.

> [The plaintiff] must bring to [the Commissioner's] attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. 416.912(a); 20 C.F.R. 404.1512(a).

To obtain remand for an ALJ's failure to develop the record, plaintiff must demonstrate

13

that she was prejudiced by the deficiencies she alleges. *Brock v. Chater*, 84 F.3d at 728. A court is not at liberty to reverse the decision of an ALJ for not adequately developing the record unless plaintiff shows that she was prejudiced by the deficiencies alleged. *Id.* at 728-29; see also *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003). The plaintiff has not offered anything to support a claim of prejudice in this case.

## IV. CONCLUSION

The court finds that Dr. Buckley's opinion was not supported by the record evidence and was therefore properly discounted by the ALJ. The record contained sufficient medical evidence from other reliable medical sources to enable the ALJ to properly formulate the RFC, pose a complete hypothetical to the VE and determine that the plaintiff was not disabled. Because the ALJ's decision was supported by substantial evidence, the court affirms the decision of the Commissioner.

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 15th day of March, 2011.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE